People v Abreu (2021 NY Slip Op 03631)





People v Abreu


2021 NY Slip Op 03631


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

110147
[*1]The People of the State of New York, Respondent,
v
Hector Abreu, Also Known as Hector Abreau, Appellant.

Calendar Date:April 28, 2021

Before:Egan Jr., J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Craig Meyerson, Peru, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Egan Jr., J.P.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered December 1, 2017, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree (two counts), attempted assault in the first degree and attempted criminal possession of a weapon in the second degree (two counts).
In January 2017, defendant was charged by indictment with murder in the second degree and two counts of criminal possession of a weapon in the second degree stemming from allegations that, on June 27, 2014, he shot and killed the victim on the victim's front porch in the City of Schenectady, Schenectady County. Defendant moved to, among other things, dismiss the charges on constitutional speedy trial grounds and to suppress certain inculpatory statements that he made to police and certain witness identification testimony. Following three separate hearings, a judicial hearing officer recommended denial of defendant's motions, which recommendations County Court fully adopted. Meanwhile, in June 2017, defendant was charged in a supplemental four-count indictment with attempted murder in the second degree, attempted assault in the first degree and two counts of criminal possession of weapon in the second degree, stemming from a separate incident on June 27, 2014 wherein he allegedly attempted to shoot the same victim with a 9 millimeter pistol at a different location. The two indictments were consolidated for trial.
Following a 14-day jury trial, defendant was convicted of murder in the second degree (count 1), two counts of criminal possession of a weapon in the second degree (counts 2 and 3), attempted assault in the first degree (count 5) and two counts of attempted criminal possession of a weapon in the second degree (counts 6 and 7), but was acquitted of attempted murder in the second degree (count 4). He was thereafter sentenced to various concurrent and consecutive prison terms, for a total aggregate sentence of 40 years to life.[FN1] Defendant appeals.
Defendant contends that the jury's verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Initially, although defendant made a specific motion for a trial order of dismissal after the People had rested their case challenging, among other things, the lack of proof regarding the operability of the 9 millimeter handgun referenced in counts 6 and 7, defendant failed to renew his motion at the close of all the proof and, therefore, his legal sufficiency argument is unpreserved for review (see People v Rahaman, 189 AD3d 1709, 1710 [2020], lv denied 36 NY3d 1059 [2021]; People v Callahan, 186 AD3d 943, 943 [2020]). "Nevertheless, as part of our weight of the evidence review, we must necessarily determine whether the elements of the charged crimes were proven at trial beyond a reasonable doubt" (People v Smith, 193 AD3d 1260, 1261 [2021] [internal quotation marks and citations omitted[*2]]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Vandenburg, 189 AD3d 1772, 1772-1773 [2020] [internal quotation marks, brackets and citations omitted], lv denied 36 NY3d 1054 [2021]).
The evidence at trial established that defendant was a member of a street gang. On the evening of June 26, 2014, the victim was involved in an altercation outside a bodega during which Nick Gonzalez, a fellow gang member, was struck in the head with a beer bottle by one of the victim's friends. Although defendant was not present for that fight, that same evening, he started making inquiries to find out where the victim lived. Defendant rode his bicycle over to his uncle's house — who lived next door to the victim's brother — borrowed a grey hooded sweatshirt and pulled a 9 millimeter handgun out of his backpack, loaded it and indicated that he needed to find the victim to make "an arrangement" with him as he had been involved "in an issue with a little brother." The uncle did not know the victim's address, so defendant called his stepfather — who knew the victim and had sold drugs to him — and ultimately learned where the victim lived.
Later that evening, defendant met Teillo McCants, a fellow gang member, on Victory Avenue in Schenectady. They put on hooded sweatshirts, defendant gave McCants the backpack with the handgun and they left on bicycles to locate the victim. Surveillance photos from various street cameras captured defendant and McCants shortly after midnight on January 27, 2014 as they made their way from Victory Avenue toward the victim's apartment on Main Street. As they approached the intersection of Ostrander Place and Main Street, they observed the victim and another individual down the street. Defendant pulled the semiautomatic pistol out of the backpack and attempted to fire at the victim, but the pistol failed to fire. Defendant and McCants left the scene and defendant called his stepfather and made arrangements to pick up another handgun from one of the stepfather's acquaintances on Sixth Avenue. Defendant and McCants biked to Sixth Avenue and defendant picked up the other gun — a revolver — and returned to the victim's apartment. They proceeded to walk through the victim's backyard and observed him through his apartment window as he made his way towards the front door. When the victim opened the door, defendant fatally shot the victim and fled. A few days later, defendant admitted to his stepfather that he tried to shoot the victim with the 9 millimeter pistol but it had jammed and that, after he obtained the revolver, he "put three bullets in [the victim]."[*3]
Upon review, although a different verdict would not have been unreasonable, evaluating the evidence in a neutral light, we are satisfied that the jury gave the evidence the weight that it should have been afforded and that the People proved the elements of the subject crimes beyond a reasonable doubt (see People v Warner, ___ AD3d ___, ___, 2021 NY Slip Op 02840, *5 [2021]; People v White-Span, 182 AD3d 909, 913-914 [2020], lv denied 35 NY3d 1071 [2020]). Contrary to defendant's contention, although there was evidence presented that the 9 millimeter handgun associated with counts 5, 6 and 7 did not fire when defendant initially attempted to shoot the victim, the People were not required to prove the operability of the weapon to establish an attempt, and the evidence otherwise demonstrated that defendant believed the gun to be operable when he pulled it out, pointed it at the victim and attempted to shoot him (see People v Saunders, 85 NY2d 339, 342 [1995]; People v Almodovar, 183 AD3d 1243, 1244 [2020]; People v Boyd, 153 AD3d 1608, 1609 [2017], lv denied 30 NY3d 1103 [2018]).
County Court properly denied defendant's motion seeking dismissal of the indictment on the ground that his constitutional speedy trial rights were violated based upon the 30-month delay between the June 2014 commission of the subject crimes and his January 2017 indictment. Where there is an extended period of preindictment delay, it is the People's burden to establish good cause for the delay (see People v Decker, 13 NY3d 12, 14 [2009]; People v Singer, 44 NY2d 241, 253-254 [1978]; People v Rogers, 157 AD3d 1001, 1004 [2018], lv denied 30 NY3d 1119 [2018]). The relevant factors to be considered in determining whether a defendant has been denied his or her constitutional speedy trial rights include the extent of the delay, the reason for the delay, the nature of the charges, any extended pretrial incarceration and any prejudice or impairment to the defendant as a result of the delay (see People v Vernace, 96 NY2d 886, 887 [2001]; People v Taranovich, 37 NY2d 442, 445 [1975]; People v Young, 190 AD3d 1087, 1093 [2021], lvs denied 36 NY3d 1100, 1102 [2021]).
Although the 30 months that elapsed between the incident and the indictment was not insignificant, the evidence at the Singer hearing established that the People had a good faith basis justifying the delay in prosecution, as there were no independent eyewitnesses to the shooting, no murder weapon was recovered and the police were presented with a complex investigation involving reviewing surveillance footage from throughout the city, identifying and interviewing witnesses with gang affiliations and criminal records that created reliability issues and the corresponding need to corroborate witness statements. Ultimately, the People established that, throughout the period of preindictment delay, they were actively attempting to identify the shooter and rule out other potential suspects. Further, although defendant [*4]was incarcerated from December 2014 until his indictment, that incarceration was due to other charges unrelated to this case. Accordingly, given the lack of any demonstrated prejudice or impairment to his defense, we do not find that the preindictment delay at issue denied defendant his constitutional due process or speedy trial rights (see People v Young, 190 AD3d at 1093-1094; People v Heimroth, 181 AD3d 967, 970 [2020], lv denied 35 NY3d 1027 [2020]).
We reject defendant's contention that the statements that he made to police during interviews in November and December 2014 should have been suppressed because his limited proficiency of the English language prevented him from knowingly, intelligently and voluntarily waiving his Miranda rights. At the Huntley hearing, detective Donald Kiser testified — and video recordings of both police interviews confirm — that defendant was advised of his Miranda rights during both interviews, affirmatively indicated that he understood the rights that he was waiving and signed a corresponding advisement of rights form to that effect. Defendant specifically indicated that he could read, write and understand English, at no point in time during either interview did he express any difficulty understanding the detectives, the recorded interviews demonstrate that the victim and the detectives were readily able to converse with one another and defendant asked appropriate questions regarding his advisement of rights, demonstrating his comprehension thereof. Accordingly, having reviewed the totality of the circumstances, we find that defendant knowingly, intelligently and voluntarily waived his Miranda rights, and his motion to suppress the subject statements, therefore, was appropriately denied (see People v Vazquez, 145 AD3d 1268, 1269-1270 [2016]; People v Mao-Sheng Lin, 50 AD3d 1251, 1253-1254 [2008], lv denied 10 NY3d 961 [2008]).
With respect to defendant's motion to suppress certain pretrial identifications, we find that the evidence adduced at the Rodriguez hearing established a sufficient relationship between defendant and the identifying witnesses such that County Court appropriately denied the motion on the ground that the identifications were merely confirmatory (see People v Montes, 178 AD3d 1283, 1290 [2019], lv denied 34 NY3d 1161 [2020]; see also CPL 710.60 [4]).[FN2] Defendant's contention that County Court erred by failing to hold a Dunaway hearing was not preserved for our review as he failed to specifically request such a hearing in his omnibus motion (see People v Purcelle, 282 AD2d 824, 824-825 [2001]; People v Benson, 88 AD2d 229, 230 [1982]). In any event, even assuming that his motion could be construed as requesting such a hearing, his claim is without merit, as he failed to set forth any sworn allegations of fact that would warrant conducting same (see People v Mendoza, 82 NY2d 415, 426 [1993]; People v Brinkley, 174 AD3d 1159, 1163 [2019], lv denied 34 NY3d 979 [2019]).
Finally, we are [*5]unpersuaded that defendant's sentence was harsh and excessive. It was permissible for County Court to impose consecutive sentences with respect to defendant's convictions, as the underlying incidents set forth in the consolidated indictments constituted separate and distinct events (see CPL 70.25; People v Burns, 188 AD3d 1438, 1443-1444 [2020], lvs denied 36 NY3d 1055, 1060 [2021]). Moreover, although defendant was only 19 years old when he committed the subject crimes, County Court specifically took defendant's age into account when rendering its sentence and, given the seriousness of the offenses for which he was convicted and his criminal history, we discern no abuse of discretion or extraordinary circumstances that would warrant a reduction of the sentence in the interest of justice (see People v McCommons, 143 AD3d 1150, 1155 [2016], lvs denied 29 NY3d 999, 1001 [2017]; People v Parbhudial, 135 AD3d 978, 982 [2016], lv denied 27 NY3d 967 [2016]). To the extent not specifically addressed, defendant's remaining contentions have been reviewed and found to be without merit.
Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The sentence was ordered to run consecutively to a separate 12½-year prison sentence that defendant was already serving for an unrelated conviction.

Footnote 2: Although defendant contends that the People failed to establish the reliability or credibility of the identifying witnesses in violation of the Aquilar-Spineli test, this argument is unpreserved for our review as defendant did not raise this issue at the suppression hearing (see People v Baptista, 130 AD3d 1541, 1543 [2015], lv denied 27 NY3d 991 [2016]).